(112 So. 318)

## McWILLIAMS v. McWILLIAMS.
### (1 Div. 428.)

Supreme Court of Alabama. March 31, 1927.

**1. Divorce ☞314—"Divorce from bed and board" is only legal separation; marriage continuing in regard to everything not necessarily withdrawn by decree.**

A "divorce from bed and board" is only a legal separation; marriage continuing in regard to everything not necessarily withdrawn from its operation by decree.

**2. Divorce ☞331—Decree for alimony, at least as concerns past-due installments, is final, even though it may be modified.**

As respects enforcement in another state, decree for alimony, in so far at least as concerns past-due installments, is none the less a final decree because it may be modified by court which rendered it.

**3. Divorce ☞241—Where divorce from bed and board was granted, decree awarding alimony in monthly installments held proper, though husband had removed to another state (Code 1923, §§ 7423, 7424).**

Where divorce from bed and board was granted under Code 1923, § 7423, decree awarding allowance for alimony, payable in monthly installments under section 7424, authorizing court in case of divorce from bed and board to make allowance out of husband's estate, *held* proper under circumstances, even though husband had removed to another state.

**4. Divorce ☞261—Divorced husband, having removed to another state with belongings, wife held not entitled to bond, receivership, or sequestration to secure alimony payments; such proceedings being in nature of execution, and without extraterritorial effect.**

Where divorced husband had removed to another state with his belongings, wife could have no remedy for securing payment of alimony by decree which would provide for bond, receivership, or sequestration; such proceedings being in nature of execution, and not of decree, and thus without extraterritorial effect.

**5. Appeal and error ☞931(10)—Register's finding of fact is presumptively correct.**

Register's finding of fact is presumptively correct, though presumption may not be as weighty on matter of values.

**6. Divorce ☞231—Parties' behavior may be considered in determining propriety of allowance to divorced wife.**

Consideration of husband's and wife's behavior may be taken into account in determining propriety of allowance to wife granted divorce from bed and board.

**7. Divorce ☞258—In case of divorce from bed and board, husband may be required to supplement his income out of his interest in his business to pay alimony (Code 1923, §§ 7418, 7424).**

Under Code 1923, § 7424, providing that court has same power in cases of divorce from bed and board to make allowance to wife as in cases of divorce from bonds of matrimony, and

---

section 7418, providing that court must decree allowance out of husband's estate on decree of divorce,. husband may be required to supplement his income out of his interest in his business in order to be able to pay alimony awarded.

**8. Divorce ☞240(5)—Allowance of $833.33 per month alimony held excessive, where husband's estate was worth approximately $1,500,000; $600 per month being sufficient under circumstances.**

Where husband's estate was worth approximately $1,500,000, allowance of $833.33 per month alimony to wife, where divorce from bed and board had. been granted, and where husband's evidence showed his salary to be $9,000 per year, *held* excessive; $600 per month being sufficient under circumstances shown.

**9. Appeal and error ☞162(1)—Divorced wife, who had been accepting monthly payments of alimony awarded, could urge on cross-appeal that allowance was insufficient.**

Where wife, after rendition of divorce decree, had been accepting payments of alimony awarded, she could urge on cross-appeal that allowance was insufficient.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Bill for divorce and alimony by Lucile McWilliams against John W. McWilliams. From the decree, both parties appeal. Corrected and affirmed on direct appeal; affirmed on cross-appeal.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellant.

A divorce from bed and board is merely a legalized separation, leaving intact the wife's right to participate in the husband's estate if she survives him, and the rules governing the allowance to a wife upon a separation should control. 2 Schouler, M. D. & S. (6th Ed.) § 1938; Ellison v. Mayor, etc., 53 Ala. 561; Smith v. Smith, 45 Ala. 268. Even in cases of absolute divorce, alimony is limited to a reasonable support in keeping with her station in life, and compensation for loss of right to participate in her husband's estate. Morgan v. Morgan, 203 Ala. 516, 84 So. 754. The conduct of the wife in this case disentitles her to liberality of allowance. Jones v. Jones, 95 Ala. 444, 11 So. 11, 18 L. R. A. 95; Jeter v. Jeter, 36 Ala. 391. On a separation merely, the allowance to the wife should not exceed one-half the husband's net income. Brady v. Brady, 144 Ala. 418, 39 So. 237; Murray v. Murray, 84 Ala. 365, 4 So. 239. Complainant, who was successful in the suit and has collected and retained the, fruits of the judgment, cannot maintain an appeal from such judgment. Shannon v. Mower, 186 Ala. 474, 65 So. 338; Todd v. Moore, 205 Ala. 453, 88 So. 447; Lentz v. Lamplugh, 12 Pa. 346; Elmore v. Cunningham, 208 Ala. 16, 93 So. 814; Hoard v. Hoard's Adm'r, 41 Ala, 590; Tarleton v. Goldthwaite, 23 Ala. 346, 58 Am. Dec. 296.

Smiths, Young & Johnston, of Mobile, for appellee.

Appellee had the right of appeal in this case. Phillips v. Towles, 73 Ala. 409; Todd v. Moore, 205 Ala. 451, 88 So. 447; Whetstone v. McQueen, 137 Ala. 315, 34 So. 229. The complainant had decree for alimony pendente lite, and the litigation is still pending. Code 1923, § 7417; Edwards v. Edwards, 80 Ala. 97. The register should have allowed alimony in solido. Johnston v. Johnston, 212 Ala. 351, 102 So. 709; Sellers v. Locke, 208 Ala. 169, 93 So. 876; Vaughan v. Smith, 69 Ala. 92; Warren v. Lawson, 117 Ala. 339, 23 So. 65. The trial court has the right to grant alimony in solido. Clay's Dig. 169, 170, 171; Lovett v. Lovett, 11 Ala. 763; Quarles v. Quarles, 19 Ala. 363; Jeter v. Jeter, 36 Ala. 391; Code 1852, §§ 1979, 1980; Turner v. Turner, 44 Ala. 437; Jones v. Jones, 95 Ala. 453, 11 So. 11, 18 L. R. A. 95; Shelton v. Shelton, 206 Ala. 483, 90 So. 491; Code 1923, § 7429. A decree for periodical payments is not enforceable. McAlister v. McAlister, 214 Ala. 345, 107 So. 843.

SAYRE, J. Appellee (Lucile McWilliams) procured a decree of divorce from bed and board. Both parties appeal, and the sole question now between them relates to the alimony awarded to appellee by the decree of the trial court. Appellant thinks the allowance is excessive; appellee contends that the allowance should be in solido, and, in any event, that the yearly allowance decreed by the court is inadequate.

[1] Without unnecessarily denying the power of the court to award an allowance in solido to the wife in a case in which she procures a divorce from bed and board, the court here is of opinion that the decree denying such an award in the case presented by the record is proper. By her application to the court (section 7423 of the Code) setting forth the fact that she desired only a divorce from bed and board, appellee avoided the effect of section 7431, which is that. a wife divorced a vinculo cannot under any circumstances claim dower at the death of her husband or distributive share in his personal estate. McLaughlin v. McLaughlin, 202 Ala. 16, 79 So. 354; Chamboredon v. Fayet, 176 Ala. 217, 57 So. 845; 2 Schouler, Dom. Rel. (6th Ed.) § 1943. By the same token she also reserved to herself whatever benefit may hereafter accrue to her under the laws of Florida to which state appellant has removed his residence—more liberal to the widow than the law of this state—in the event her husband shall die first. A decree of divorce from bed and board does not remove the vinculum of marriage. Ellison v. Mayor, 53 Ala. 558; Smith v. Smith, 45 Ala. 264. Such a divorce is only a legal separation; the marriage continuing in regard to everything not necessa-

---

rily withdrawn from its operation by the decree. 2 Schouler, § 1938; Taylor v. Taylor, 93 N. C. 418, 53 Am. Rep. 460. However, there is no occasion to deny that circumstances may justify a departure from the general rule—which, even in cases of absolute divorce, is to award alimony by an annual allowance payable at convenient intervals, as where property has been accumulated by the joint efforts of the husband and wife. 19 C. J. 261. In a case of that sort it would be peculiarly appropriate to give the wife her just share of the estate. But that is not this case. Some cases refer to the fact that a divorce a vinculo restores the parties to the status of unmarried persons, and that, there being no children (the case here), the lives of the parties will diverge, as reasons why the award to the wife should be a sum in gross; but here the decree from bed and board contemplates a reconciliation and re-union of the parties. The statute law of this state relating to this subject has been placed upon a very different basis since the decisions in Lovett v. Lovett, 11 Ala. 763, and Quarles v. Quarles, 19 Ala. 363, decided in 1847 and 1851, respectively, and referred to in this connection. This is noted in Jeter v. Jeter (1860) 36 Ala. 391, where reference is made to sections 1971 and 1972 of the Code of 1852, embodying substantially the provisions now found in sections 7418 and 7419 of the Code of 1923.

Section 7424 of the present Code (1923) authorizes the court, in case of a divorce from bed and board, "to make an allowance to the wife out of the estate of the husband." And so, in case of divorce a vinculo, the language of the statute (section 7418 of the Code) is that the court (judge) "must decree the wife an allowance out of the estate of the husband"; but it has never been supposed that this required a division of property between the husband and wife. All our adjudications in cases of absolute divorce have involved, necessarily, a different interpretation of the statute. In cases of divorce from bed and board there is even less reason for supposing that the Legislature intended a division of property as matter of right between husband and wife. The court committed no error in the general method of its dealing with the case.

[2-4] Proceeding then to a discussion more in detail of the difference between these parties, we observe that appellant, the husband, has removed to Florida, taking with him substantially all of his business interests, and the argument for an allowance in gross proceeds largely upon the idea that he will probably resort to whatever means may be in his power to avoid regular payments as decreed by the court, with result that the relief awarded cannot be enforced without continuous litigation, unless appellant be required to give bond to perform the decree. We are unable to say that appellant's purpose in removing to Florida, or any substantial part of it, was to put obstacles in way of complainant's relief, as appellee asserts. The larger opportunities for money making in appellant's line of business, demonstrated by his great, perhaps we may say phenomenal, success, seem sufficient to account for his removal. Nor do we feel any great confidence in the proposition that, if appellant shall be inclined to interpose unreasonable obstacles to the enforcement of the decree, he will be much more advantageously circumstanced in Florida than in Alabama. McAlister v. McAlister, 214 Ala. 345, 107 So. 843, is cited as going to show how it may be in the power of appellant to impede appellee's remedy for the collection of her allowance in Florida. But consideration of what was decided in that case will show that, as long as appellant shall have an estate out of which payment may be coerced, the remedy against him may be as effectually pursued in that state as in this. At least, it is hard to see how he may profitably deny liability for accrued installments. The jurisdiction of the trial court and of this court in this case is conclusively as matter of fact settled by the record, since appellant will scarcely deny in Florida or elsewhere that he has taken part in this proceeding both as party and as witness. Wise v. Miller (Ala. Sup.) 111 So. 913.[1] The decree may be modified; but we do not see what answer appellant could have to an action of debt brought to recover installments overdue on the allowance made by the court in this state. Schouler, Dom. Rel. § 1862, citing Sistare v. Sistare, 218 U. S. 1, 30 S. Ct. 682, 54 L. Ed. 905, 28 L. R. A. (N. S.) 1068, 20 Ann. Cas. 1061. The decree for alimony, so far at least as concerns past-due installments, is none the less a final decree because it may be modified by the court which rendered it. "Authorities are abundant which hold that such a decree, for a fixed sum, is a judgment of record, and will be received by other courts as such. And such a decree rendered in any state of the United States will be carried into judgment in any other state." Wells v. Wells, 209 Mass. 282, 95 N. E. 845, 35 L. R. A. (N. S.) 561; 35 L. R. A. (N. S.) 661; Page v. Page, 189 Mass. 85, 75 N. E. 92, 4 Ann. Cas. 296. And a decree of modification, if appellant's future course should make such decree necessary or equitable, of which appellant had notice in the original suit (to which a petition for such modification would be a mere incident), may be had, it seems, without further service. though the court in such case would take care that proper steps be taken to give him knowledge of the proceeding. Wells v. Wells, supra, where adjudications and text-books of high authority are cited. We do not intend to be understood as denying that the situation thus presented may involve some

---

[1] 215 Ala. 660.

difficulty in case appellant shall prove recalcitrant and elect to harass appellee by unnecessary, expensive, and, we must presume, unsuccessful litigation; but, on the other hand, that emergency may be met when it arises, and we must deal with the case now on the postulate of a possible reconciliation—this because appellee, after oscillating between the reliefs possible on the averments of her bill, as amendments of her bill show, elected in the end to pray for a decree from bed and board only, and the purpose of the decree is to provide suitable maintenance for the wife in the meantime, not unnecessarily to penalize the husband. Murray v. Murray, 84 Ala. 365, 4 So. 239. The case just referred to was a case in which the complainant sought alimony without divorce; but it does not materially differ from the present case in which complainant has sought and accepted relief by legal separation, with alimony, but without divorce. Upon the whole case the court is of opinion that the decree under review properly awarded an allowance (alimony) payable in monthly installments. Nor do we see how in the present situation of the parties an alternative decree may be rendered which would require appellant, in lieu of an award in gross, to make bond to secure payment of future installments during the separation of the parties or the life of appellee; that being the recourse suggested by appellee. Appellant having removed to Florida with all his belongings, appellee can have no remedy by a decree of the courts of this state which would provide for bond, receivership, sequestration, or what not of that character; such proceedings being in the nature of execution, and not of decree, and so without extraterritorial effect. Lynde v. Lynde, 181 U. S. 187, 21 S. Ct. 555, 45 L. Ed. 810.

As stated in the outset, both parties are dissatisfied with the amount of the allowance, and both have appealed. The register reported that appellant—we thus refer to the husband—has an estate, consisting of personal property, the reasonable value of which is $1,500,000; that a reasonable interest—net interest, we understand him to mean—on that amount would be 3 per cent. per annum; that a reasonable allowance to appellee for maintenance would be $10,000 per annum, payable in monthly installments of $833.33. This report was confirmed and relief was decreed accordingly. The evidence has disclosed the fact that shortly before the separation appellant conveyed to appellee title in fee to the home in which she lived, valued at $15,000, approximately, to which may be added the value of furnishings, probably $3,000. This home place is now let to rent at $100 a month. Other estate appellee has none.

Appellant's property—substantially all of it—consists of ten-twelfths of the capital stock of the J. W. McWilliams Company, a corporation doing business in Florida, which cost him approximately $240,000. The corporation has a capital stock of $1,200,000. Its financial condition was agreed upon as follows:

| Assets. | | |
|---|---|---|
| Accounts receivable | $ | 71,925 25 |
| City property | | 14,643 37 |
| Furniture & fixtures | | 772 60 |
| Notes receivable | | 2,185,332 14 |
| Plant & equipment | | 388,133 94 |
| Cash in banks | | 115,248 19 |
| Approximately 65,000 acres of land which cost $7.00 per acre | | 450,000 00 |
| | | $3,226,055 49 |
| Liabilities. | | |
| Accounts payable | | $406,048 55 |
| Freight reserve | | 1,144 15 |
| Notes payable | | 468,278 92 |
| | | $875,471 62 |

Shortly after appellant went to Florida, and shortly before the recent (now perhaps somewhat deflated) "boom" in real estate in that jurisdiction, appellant's corporation, then formed, invested a large part of its capital in the purchase of 104,000 acres of land near Ft. Myers, at an average price of $7 an acre. We infer from the statement, supra, that a large part of the purchase money is still unpaid. It has sold approximately 39,000 acres, at an average price of $75 an acre; three-fourths of the price remaining to be paid in installments. The remaining 65,000 acres, it is agreed, "have an average value equal to the average value of the lands that have been sold." It will be observed that this agreed statement leaves much to be learned as to the real value of the corporate property, and, accordingly, a great volume of testimony was taken touching the value of appellant's stock, not so much by opinions as to the value of the property of the corporation as by way of evidence tending to show how much money appellant had invested in it.

[5-7] It is written in our decisions that the register's finding of fact is presumptively correct. Johnston v. Johnston, 212 Ala. 351, 102 So. 709. In the nature of the case, however, that presumption is not as weighty in the mere matter of values as it may be where other issues are to be decided, and the bearing of the witnesses may afford valuable clews to the truth of their testimony. And in the present case we have been unable to avoid the conclusion that appellee has greatly overestimated appellant's financial worth, and the best opinion we have been able to form from the evidence shown by the record is that the register was approximately correct in his report as to the value of appellant's estate and the income that he may reasonably be expected to derive therefrom in response to the urgency of a judicial decree. Prior to the intermarriage of these parties, in November, 1914, appellant was engaged in business at Hattiesburg, Miss., and appellee

was a stenographer in his office. They separated in 1920. This bill was filed in 1922. He is now 47 years of age; she is 34. Much of the evidence is directed to the question as to who was most at fault in bringing about the estrangement. In her original bill appellee charged appellant with frequent drunkenness and adultery with a named woman and "with several other women whose names are [were] unknown to complainant." The bill was finally amended so as to charge abandonment only. But much of the evidence, pro and con, relates to the charge of infidelity brought against appellant. To induce a finding in agreement with appellee's contention as to that, circumstances must be shown such as would lead the guarded discretion of a just and reasonable man to that conclusion. Jeter v. Jeter, supra. The concession of appellee's bill is, and the proof confirms it, that, since their separation even, appellant has supported her liberally, and furnished her, not only with the necessities of life, but with many of its luxuries. In the present posture of the cause this concession may not be considered as affecting the right to a decree of divorce, for that is not now in issue between the parties. It is considered for what bearing it may have on the issue as to the amount of appellee's allowance, not directly, but indirectly, as shedding some light on the proper location of the blame for the separation of the parties. But appellant in the prosecution of his business, the manufacture and sale of lumber, was frequently away from home—not unreasonably so, for aught we can see—and because of this fact, and because she was able to intercept three or four letters of doubtful meaning addressed to her husband by an anonymous female—no doubt appellant knew from whom they came—appellee seems to have proceeded upon the theory that appellant had "a woman in every port"; but the court cannot proceed upon that theory, nor is there proof of actual transgression of matrimonial limits at any specific time or place. Considerations suggested by what has been said on the subject of appellant's behavior are to be taken into account in determining the propriety of the allowance to appellee.

As for appellant's view of the facts affecting the allowance: The evidence offered on his behalf goes to show that his income is limited to a salary of $9,000 per annum which he receives from the corporation heretofore spoken of. His contention further is that by her continual suspicions and persistent nagging appellee made life with her a burden. Circumstances of that sort are certainly proper matters of consideration (Jones v. Jones, 95 Ala. 443, 11 So. 11, 18 L. R. A. 95), and appellant thinks such consideration should result in a decree relieving him of a material part of the allowance awarded in the trial court. That appellee fell into the habit of suspecting appellant on all occasions we think cannot be denied, and we feel reasonably confident that she communicated her suspicions offensively, not only to appellant, but to other persons (relatives of appellant) who she thought might be interested in the results of his conduct. This habit she formed probably because of the fact that appellant had been divorced from two wives, before she intermarried with him, because he was much away from home, and because he, though a successful business man, was given to drink at times, and because of the other facts heretofore stated. Appellant had procured a divorce from his first wife on the ground of her adultery. He had connived at a divorce obtained by the second on the ground of his adultery, as he confesses; that is, he confesses connivance. At times he drank heavily. But all this appellee knew when she married him a few months after his second divorce. And then, after a few years, she nagged, as if by that means to revive his then flagging affection. Things, naturally, went from bad to worse, and in the end appellant quit his home. We do not think the whole fault is to be visited upon either party, and have given attentive consideration to appellant's contention that in no case should an allowance be made in excess of his entire income. We are satisfied that appellant may, if he will, easily supplement his income out of his interest in the business of his corporation, and that such requirement in proper cases is what the statute (section 7424 of the Code) intends by its provision, referring to section 7418, where it is said that the court "must decree the wife an allowance out of the estate of the husband."

[8] After full consideration of the evidence, the court here is of opinion that an allowance of $600 a month, in connection with the provision already made for her by appellant, will place appellee in a position to command all the necessities, and some of the luxuries, to which moderately well-to-do people are accustomed, will afford her the means of living in more comfort and better style than she has heretofore enjoyed, and that with this provision she must for the present at least be content. And, accordingly, the decree will be so corrected. Such decree will remain subject to modification in the trial court for good cause shown.

The costs of this appeal will be taxed against appellee (Lucile McWilliams). The trial court made no disposition of the costs in that court. The decree here is that appellant pay such costs.

[9] Appellant has moved to dismiss the cross-appeal on the ground that, since the rendition of the decree, appellee has insisted on its monthly provision for her, and has accepted that provision continuously down to the present time—this upon the authority of Shannon v. Mower, 186 Ala. 474, 65 So. 338; Todd v. Moore, 205 Ala. 451, 88 So. 447; Elmore v. Cunninghame, 208 Ala. 16, 93 So. 814,

and other cases in the same line. The discussion up to this point has proceeded upon the assumption that appellee, so again to speak of the cross-appellant, might review the question of the proper amount of the allowance notwithstanding she has been in receipt of the allowance as fixed by the decree. This assumption, we think, has done no violence to the principle upon which in the ordinary case the court proceeds in denying the right of review; that is, the principle of estoppel which would prevent a party from drawing a judgment into question to the prejudice of his adversary after he has coerced its execution or accepted its benefits. Very clearly that principle would operate to deny an appeal in a case where a reversal and a new trial might result in the appellant's failure to have any relief whatever. But that is not this case. It is not denied, and cannot be, that cross-appellant is entitled to an allowance. Cross-appellant was entitled to support and maintenance pending the litigation whether successful or not. The whole matter was to be determined de novo—notwithstanding such presumption as is properly indulged in favor of the register's report—by this court, and we see no reason why cross-appellant should not be heard to urge upon the court her view as to the amount of the allowance to the extent even of a modification in her favor.

The court orders a decree which will correct the decree rendered by the circuit court as we have heretofore indicated. On the cross-appeal the decree is affirmed. Appellee will pay the cost of appeal.

Corrected and affirmed on direct appeal; affirmed on cross-appeal.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.